**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-40794

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CRISTOBAL VASQUEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

July 11, 2002

Before JOLLY, DeMOSS and PARKER, Circuit Judges.

PER CURIAM:

Pursuant to a written conditional plea agreement, Cristobal Vasquez pleaded guilty to possession with intent to distribute in excess of five kilograms of cocaine. Vasquez was sentenced to 240 months imprisonment, a 10 year period of supervised release, and a $100 special assessment. On appeal, Vasquez challenges his conviction and sentence. For the reasons that follow, we affirm.

-1-

South Texas highways often serve as corridors for illegal immigration and drug-trafficking activity originating in Mexico. In an effort to stem these illegal activities, the United States Border Patrol has established checkpoints along the highways leading from border towns to the state's interior. Two such checkpoints are operated outside of Laredo on Highway 59 and Interstate 35. These two checkpoints can be avoided, however, by utilizing dirt roads that traverse private ranches in the area.

In January 2001, Border Patrol Agent Freeman, traveling on Highway 59 outside of Laredo, noticed a late model Ford pickup truck, bearing no commercial markings or radio equipment antennas, exit Highway 59 onto a dirt ranch road. In Agent Freeman's experience, it was uncommon for a new pickup truck to use the dirt ranch roads. Coupled with the knowledge that this particular dirt road ultimately provided egress to Highway 44 from a private ranch northeast of the Border Patrol checkpoints on Highway 59 and Interstate 35, Agent Freeman suspected that the vehicle was attempting to avoid the checkpoints.

Acting on his suspicion, Agent Freeman proceeded to the Highway 44 egress point and parked his vehicle parallel with the road. Because of his familiarity with the area, Agent Freeman knew that it takes approximately 50 minutes to travel to the Highway 44 egress point from the dirt road beginning on Highway 59 if no stops

are made along the way.  When the same pickup truck emerged from the dirt ranch road approximately 50 minutes later and turned on to Highway 44, Agent Freeman followed.  The driver, Vasquez, repeatedly checked his rear-view mirror, indicating to Agent Freeman that he was nervous, and within a half mile, Agent Freeman stopped the pickup truck to perform an immigration inspection.  An inspection of the vehicle resulted in the discovery of a false compartment in the bed of the truck containing 147 bundles of cocaine weighing 162.2 kilograms.

Vasquez was indicted by a grand jury and charged with one count of conspiracy to possess more than 5 kilograms of cocaine with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) ("Count One") and one count of possessing more than 5 kilograms of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 ("Count Two").  Vasquez pleaded not guilty to both charges and then filed a motion to suppress the prosecution's evidence.  Following an evidentiary hearing, the district court found specific and articulable facts sufficient to create reasonable suspicion and held that "Agent Freeman's actions were justified and within the scope of an investigatory detention involving the possibility of illegal drug or immigration activity." Vasquez then entered a conditional guilty plea to Count Two pursuant to a written plea agreement which preserved his right to

appeal the district court's denial of the suppression motion. Subsequently, Count One of the indictment was dismissed and Vasquez was sentenced to 240 months imprisonment, a 10 year period of supervised release, and a $100 special assessment.

On appeal, Vasquez asserts that the district court erred in: 1) denying his motion to suppress the prosecution's evidence; 2) enhancing his sentence under 21 U.S.C. § 841 on the basis of a prior Texas state deferred adjudication; and 3) enhancing his sentence on the basis of a prior conviction when he was represented in the district court case by the same attorney as in the prior state case, and a conflict of interest existed because defense counsel failed to and/or was unwilling to litigate the issue of his own effectiveness in the earlier state deferred adjudication proceeding. Vasquez also contends, for the first time on appeal, that 21 U.S.C. §§ 841 (a) and (b) are unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that the district court erred in imposing a 240 month mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A) because his prior conviction was not alleged in the indictment.

## STANDARD OF REVIEW

We accept a district court's ruling on a motion to suppress based upon live testimony at a suppression hearing unless it is clearly erroneous or influenced by an incorrect view of the law. *United States v. Foy*, 28 F.3d 464, 474 (5th Cir. 1994); *United*

-4-

*States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993). The evidence is viewed in the light most favorable to the party that prevailed at trial. *Laury*, 985 F.2d at 1314. Questions of law are reviewed *de novo*, *United States v. Muniz-Melchor*, 894 F.2d 1430, 1433 (5th Cir. 1990), as are the district court's ultimate conclusions of Fourth Amendment reasonableness. *United States v. Colin*, 928 F.2d 676, 678 (5th Cir. 1991). We review a district court's application of the sentencing guidelines *de novo* and findings of fact for clear error. *United States v. Alarcon*, 261 F.3d 416, 423 (5th Cir. 2001). We review for plain error, issues raised for the first time on appeal. *United States v. Meshack*, 225 F.3d 556, 575 (5th Cir. 2000).

**ANALYSIS**

Vasquez raises a number of issues on appeal. We address each in turn below.

A.   Motion to Suppress

Vasquez contends that the district court erred in denying his motion to suppress. Specifically, Vasquez argues that Agent Freeman lacked reasonable suspicion to justify the stop of his vehicle which ultimately led to the discovery of cocaine and his conviction.

A Border Patrol agent on roving patrol may temporarily detain a vehicle for investigation only if he is "aware of specific articulable facts, together with rational inferences from those

-5-

facts, that reasonably warrant suspicion that the vehicle is involved in illegal activities." *United States v. Inocencio*, 40 F.3d 716, 722 (5th Cir. 1994) (internal quotations and citations omitted). Factors relevant in determining whether a Border Patrol agent acted with reasonable suspicion include:

> (1) known characteristics of a particular area, (2) previous experience of the arresting agents with criminal activity, (3) proximity of the area to the border, (4) usual traffic patterns of that road, (5) information about recent illegal trafficking in aliens or narcotics in the area, (6) the behavior of the vehicle's driver, (7) the appearance of the vehicle, and (8) the number, appearance and behavior of the passengers.

*Id*. (citations omitted). No single factor is dispositive in determining whether an agent acted with reasonable suspicion. *Id*. Rather, each case is examined in light of the "totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances." *Id*. (internal quotation and citation omitted).

In the instant case, Vasquez's vehicle was observed traveling on Highway 59, a known corridor for illegal immigration and drug trafficking. The vehicle bore no commercial markings or radio equipment antennas and was consistent with the type used by traffickers. The vehicle was observed detouring on to a private dirt ranch road known for use by alien and drug traffickers to evade Border Patrol checkpoints on Highway 59 and Interstate 35. Agent Freeman did not believe the pickup truck was a ranch vehicle

-6-

because in his experience, it was uncommon for a new vehicle to use the ranch roads. The elapsed time between the vehicle's detour onto the dirt road and egress onto Highway 44 beyond the checkpoints was consistent with a vehicle being driven straight through without making any stops along the way and thus having no purpose other than circumventing the Border Patrol checkpoints. Finally, Vasquez repeatedly checked his rear-view mirror and appeared nervous as Agent Freeman began to follow him on Highway 44.

Vasquez maintains, however, that the circumstances surrounding the stop of his vehicle do not add up to reasonable suspicion. In an effort to support this position Vasquez asserts that Agent Freeman articulated no facts supporting an inference that the vehicle in question came from the border, and that his presence on and use of the private dirt road did not create reasonable suspicion simply because the road was known to be used for illegal activities. Furthermore, Vasquez contends that the appearance of having driven straight through the dirt ranch road did not create reasonable suspicion because he could have been dropping something off, picking something up, or inspecting the ranches from the vehicle. Finally, Vasquez argues that the fact that his pickup truck was new and that Agent Freeman was unfamiliar with it did not create reasonable suspicion because trucks are common in ranching country, and Agent Freeman admitted that he did not know every vehicle that used the dirt ranch road.

We do not find Vasquez's arguments persuasive.  Although each and every specific fact articulated at the suppression hearing, when examined alone, may be insufficient to create reasonable suspicion, when examined together, as a whole, there can be no doubt that Agent Freeman's suspicion was reasonable and his actions justified.  Accordingly, we find no error on the part of the district court in denying Vasquez's motion to suppress.

## B. Deferred Adjudication

Vasquez asserts that the district court erred by enhancing his sentence based on a prior Texas state court deferred adjudication for aggravated possession of marijuana pursuant to 21 U.S.C. § 841(b)(1)(A).  Vasquez's 240 month sentence[1] resulted from the following provision: "If any person commits [a violation of § 841(a)] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . ."  21 U.S.C. § 841(b)(1)(A).  Although Vasquez concedes that his Texas deferred adjudication is a "prior conviction" under 21 U.S.C. § 841(b)(1)(A), he contends that his deferred adjudication was not "final" and could not be used to

_____

[1]Had the district court not enhanced Vasquez's sentence based on his prior state deferred adjudication, the statutory minimum sentence would have been 10 years and the maximum sentence would have been life imprisonment.  *See* § 841 (b)(1)(A).  Vasquez's guideline range was 151 to 188 months.  Pursuant to U.S.S.G. § 5G1.1(c), the district court would have been limited to imposing a sentence within the applicable guideline range.

-8-

enhance his sentence because he still had the possibility of appellate review of his state case at the time that he committed the instant offense.

Vasquez asserts that he retained the right, upon revocation of his deferred adjudication, to appeal the revocation and any sentence imposed thereon. Furthermore, Vasquez argues that even after revocation of his deferred adjudication, he could still file a motion for new trial, which if granted, would undo the state court conviction, and if the motion was denied, he would have the right to appeal the denial.

We have not previously addressed this issue with respect to 21 U.S.C. § 841(b)(1)(A). In *United States v. Morales*, 854 F.2d 65 (5th Cir. 1988), however, we considered an objection to a sentencing enhancement made pursuant to 21 U.S.C. § 841(b)(1)(B), an analogous drug enhancement statute containing the same language as 21 U.S.C. § 841(b)(1)(A).[2] In *Morales*, the defendant objected to the enhancement arguing that his prior conviction was not final under Texas law. *Morales*, 854 F.2d at 68. After noting that "the meaning to be assigned to the term 'ha[s] become final' in 21

---

[2]Section 841(b)(1)(B) applies to any person convicted of a drug felony which carries a penalty of imprisonment of not less than five years nor more than 40 years, and provides for the following enhancement: "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . . ." 21 U.S.C. § 841(b)(1)(B).

-9-

U.S.C. § 841(b)(1)(B) is a question of federal, not state law," we held that

> the final-conviction language of § 841(b)(1)(B) applies to a conviction which is no longer subject to examination on direct appeal, including an application for certiorari to the United States Supreme Court, either because of disposition on appeal and conclusion of the appellate process, *or because of the passage, without action, of the time for seeking appellate review*. [The defendant] did not appeal his Texas felony conviction and the time for doing so has passed; thus, for federal sentencing enhancement purposes under § 841(b)(1)(B), that conviction *has become final.*

*Id*. at 65, 68-69 (emphasis added and internal citations omitted). Our language in *Morales* is clear. For purposes of sentencing enhancement under § 841(b)(1), a conviction does not become final until the time for seeking direct appellate review has elapsed, and enhancement is authorized only if the commission of the § 841 offense occurs after the prior felony drug offense has become final.

Under Texas law, a defendant must file a notice of appeal "within 30 days after the day sentence is impose or suspended in open court." *See* TEX. R. APP. PROC. 26.2(a)(1) (1999). A defendant whose deferred adjudication is revoked may appeal only from the revocation. The underlying adjudication may be appealed only at the time probation is given. TEX. CODE CRIM. PROC. ANN. ART. 42.12, § 23(b) (Vernon Supp. 1999)(A defendant's right "to appeal for a review of the conviction and punishment, as provided by law, shall be accorded the defendant at the time he is placed on community

-10-

supervision.  When he is notified that his community supervision is revoked for violation of the conditions . . ., he may appeal the revocation."); *see also Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999) (en banc) ("[A] defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, such as evidentiary sufficiency, only in appeals taken when deferred adjudication community supervision is first imposed.").  Thus, the proper analysis of whether Vasquez's prior state conviction had become "final" focuses not on whether his deferred adjudication had been revoked and a formal adjudication of guilt entered, but instead on whether the time for appealing the entry of deferred adjudication had passed.

Vasquez pleaded guilty in Texas state court to aggravated possession of marijuana on March 1, 2000.  Vasquez subsequently received deferred adjudication and was placed on probation for a period of 10 years.  The instant federal offense was committed on January 30, 2001, and on April 9, 2001, the State filed a motion to adjudicate Vasquez's guilt based on alleged violations of probation.  Vasquez does not claim to have appealed the imposition of probation in his Texas case within the 30 day time period for filing such an appeal.  Accordingly, 30 days after the Texas court imposed probation pursuant to Vasquez's guilty plea, his conviction for the state offense became "final" for purposes of the § 841(b)(1)(A) enhancement, and the district court did not err in

-11-

basing an enhancement of Vasquez's federal sentence on the state conviction.

## C.  Conflict of Interest

Vasquez maintains that the district court erred in enhancing his sentence because he was represented in both the prior state case and the instant federal case by the same defense counsel, and the district court, aware of the conflict of interest, did not conduct a hearing and obtain a valid waiver of conflict pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). Specifically, Vasquez argues that a conflict of interest arose from counsel's failure and/or unwillingness to litigate the issue of his own effectiveness in the earlier state deferred adjudication proceeding.

Under the Sixth Amendment, a defendant has a constitutional right to "representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993). A conflict of interest exists "when defense counsel places himself in a position conducive to divided loyalties." *Id*. (citations omitted). (internal quotations and citations omitted). The need for a hearing pursuant to *Garcia* to determine whether the defendant knowingly and voluntarily waived the right to representation free from any conflict is triggered by the finding of an actual conflict of interest. *Id*.

Generally, an attorney owes a duty of loyalty to his client

-12-

which requires the attorney to place his client's interest ahead of his own interests. *Beets v. Scott*, 65 F.3d 1258, 1269 (5th Cir. 1995) (en banc) (citations omitted). The framework for analyzing attorney conflicts outside of the multiple or serial client context was elucidated in *Strickland v. Washington*, 466 U.S. 668, 689-94 (1984). To show prejudice under *Strickland*, a defendant must demonstrate that counsel's error was so serious as to "render[] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A failure to establish either deficient performance or prejudice defeats the claim. *Strickland*, 466 U.S. at 697.

Vasquez contends that counsel's conflict of interest prevented him from raising a collateral challenge to his Texas state deferred adjudication based on counsel's alleged ineffectiveness during the deferred adjudication proceeding. Vasquez does not specify, however, how counsel was ineffective at the deferred adjudication proceeding, nor does he state how the alleged ineffectiveness affected the outcome of the proceeding. Vasquez's conclusory allegations respecting counsel's ineffectiveness are insufficient to show that he was prejudiced by counsel's representation of him in the state and federal proceedings or that a conflict actually existed. Because Vasquez has not shown that an actual conflict existed, he has not shown the need for a hearing and waiver of conflict pursuant to *Garcia*. Accordingly, the district court did

not err in enhancing Vasquez's sentence on the basis of his prior Texas state court conviction resulting in deferred adjudication.

### D.  Constitutionality of 21 U.S.C. § 841(a) and (b)

Although Vasquez did not raise the issue in the district court proceeding, he now argues on appeal that the district court erred in sentencing him under 21 U.S.C. § 841 because the provisions found at § 841(a) and (b) are unconstitutional.  Specifically, Vasquez contends that the statute's assignment of penalties based on the types and quantities of controlled substances is facially unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Vasquez concedes that his argument is foreclosed by our decision in *United States v. Slaughter*, 238 F.3d 580 (5th Cir. 2000), *cert. denied*, 532 U.S. 1045 (2001), yet he seeks to preserve it for further review.  In light of our holding in *Slaughter*, we reject Vasquez's argument.[3]

### E.  Mandatory Minimum Sentence

Vasquez asserts, for the first time on appeal, that the district court erred in sentencing him to a 240 month mandatory

---

[3]We also note that *Apprendi* is not applicable to the instant case.  *Apprendi* provides that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490. Vasquez was indicted for possessing more than five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) and (b).  The 240 month sentence received by Vasquez does not exceed the statutory maximum sentence of life imprisonment afforded by 21 U.S.C. § 841.

minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A).  In support of this assertion, Vasquez again relies on *Apprendi*, and maintains that his prior conviction could not serve as the basis for a sentencing enhancement because the prior conviction was not alleged in the indictment.  Vasquez acknowledges that his argument is foreclosed by the Supreme Court's decision in *Almendarez-Torrez v. United States*, 523 U.S. 224 (2000), but he seeks to preserve it for further review.  Because *Apprendi* did not overrule *Almendarez-Torrez*, Vasquez's argument is without merit.  *See Apprendi*, 530 U.S. at 490; *United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000), *cert. denied*, 531 U.S. 1202 (2001).  Accordingly, the district court did not err in sentencing Vasquez to a 240 month mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A).

## CONCLUSION

For the reasons discussed above, we affirm Vasquez's conviction and sentence.

AFFIRMED.