**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 01-41418

(Summary Calendar)

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGER ACOSTA-TALAMANTEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
USDC No. L-01-CR-361-ALL

_____

October 22, 2002

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:*

Appellant Roger Acosta-Talamantez appeals the district court's denial of his motion to

suppress. Acosta-Talamantez entered a conditional guilty plea to possession with intent to distribute

more than 1000 kilograms of marijuana, reserving the right to appeal the denial of his motion to

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

suppress the marijuana and any other evidence found in the vehicle he was driving. He contends that the district court erred in denying his motion to suppress because border patrol agents exceeded the permissible scope of his initial stop at a checkpoint, lacked reasonable suspicion to stop him a second time, and conducted an unlawful warrantless search of his unattended vehicle. We affirm.

A tractor-tanker driven by Acosta-Talamantez was stopped at a border patrol checkpoint located south of Hebronville, Texas. Border Patrol Agent David De La Rosa observed Acosta-Talamantez behaving nervously and noticed that the tanker was leaking a fluid that smelled of ammonia. Acosta-Talamantez told De La Rosa that the fluid was fertilizer, which he was hauling to a nearby company called Katco. Agent De La Rosa opened the valves located on top of the tanker and detected a strong smell of both ammonia and marijuana, but was unable to inspect the interior because he lacked the necessary tools. Acosta-Talamantez was permitted to leave, but was followed by Border Patrol Agent Adam Baird. After border patrol agents learned that Katco did not deal in fertilizer, however, Baird was ordered to stop Acosta-Talamantez and bring him to another checkpoint for further inspection. Acosta-Talamantez agreed to accompany Baird but, after following Baird's vehicle for a distance, he turned onto a dirt road and drove into the brush, eventually becoming stuck in heavy sand. By the time Agent Baird reached the vehicle, Acosta-Talamantez was nowhere to be found. Agents towed the vehicle to a checkpoint, where they searched it using special tools and discovered approximately 2,200 pounds of marijuana in the tanker. Acosta-Talamantez was found a few hours later and placed under arrest.

At the suppression hearing, Acosta-Talamantez did not contest the legality of the initial search. Instead, he argued that, because that search was "fruitless," the border agents lacked sufficient justification to stop him a second time and that the subsequent stop constituted an illegal

arrest.  The district court denied the motion to suppress, finding that the second stop was justified

by the agents' articulable suspicions that the vehicle contained marijuana, that Acosta-Talamantez

was not placed under arrest, and that he lost any reasonable expectation of privacy in the vehicle

when he abandoned it.  Acosta-Talamantez now appeals.

"This Circuit's standard of review for a motion to suppress based on live testimony at a

suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced

by an incorrect view of the law."  *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993).  We

review the trial court's conclusions of law *de novo*.  *Id.*

On appeal, Acosta-Talamantez argues that the initial stop and search of his vehicle exceeded

the permissible scope of a border search or, in the alternative, that the two stops constituted a single,

unconstitutionally long checkpoint stop.  Because these arguments were not raised at trial, however,

they are waived.  *See* FED. R. CRIM. P. 12(b)(3); FED. R. CRIM. P. 12(f); *see also United States v.

Chavez-Valencia*, 116 F.3d 127, 129-33 (5th Cir. 1997) ("We find that the plain language of Rules

12(b)(3) and 12(f), the history of the rules relating to motions to suppress, the relevant Fifth Circuit

case law and sound policy considerations all dictate that the failure to raise a suppression issue at trial

forecloses a defendant from raising the issue for the first time on appeal.").[1]

Acosta-Talamentez also contends that the second stop was an unjustified detention by a

roving patrol.  A border patrol agent on a roving patrol may temporarily detain a vehicle for

investigation where the agent is "aware of specific articulable facts, together with rational inferences

from those facts, that reasonably warrant suspicion that the vehicle is involved in illegal activities."

---

[1] For this same reason, we do not consider the argument, raised for the first time on appeal, that the border agents exceeded their statutory authority under 8 U.S.C. § 1357(a).

*United States v. Vasquez*, 298 F.3d 354, 357 (5th Cir. 2002). Given Acosta-Talamentez's nervous behavior at the initial stop and the odor of ammonia and marijuana emanating from his vehicle, the border agents reasonably suspected that he was involved in criminal activity and were justified in stopping him again when they learned that he had apparently lied about delivering fertilizer to Katco. Under the "collective knowledge" doctrine, it is irrelevant whether Agent Baird personally possessed all of this information when he was ordered to stop Acosta-Talamentez. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999) (finding that, under the "collective knowledge" doctrine, law enforcement officers without knowledge of information creating reasonable suspicion could stop vehicle based on communication from officer who possessed such information).[2]

Lastly, Acosta-Talamentez contends that the border agents lacked probable cause to search his vehicle after he fled. There is no reasonable expectation of privacy in an item voluntarily abandoned in a public place. *See United States v. Barlow*, 17 F.3d 85, 88 (5th Cir. 1994) ("A defendant has abandoned his reasonable expectation of privacy when he leaves an item in a public place."); *see also United States v. Edwards*, 441 F.2d 749, 751-53 (5th Cir. 1971) (finding that "Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot"). Although a defendant may not be compelled to abandon property, "[t]he legal presence of the police for investigatory purposes or pursuit does not render an abandonment involuntary." *United States*

---

[2] Acosta-Talamentez does not argue on appeal, as he did in the district court, that this stop resulted in an illegal arrest. Even had he done so, this argument would have been unsuccessful. His own testimony demonstrates that he was not under arrest because he considered himself free to refuse to follow Agent Baird but voluntarily chose to do so. *See, e.g.*, *United States v. Bailey*, 447 F.2d 735, 737 (5th Cir. 1971) (finding that postal inspectors' request that defendant accompany them did not constitute a de facto arrest where defendant went voluntarily).

*v. Quiroz-Hernandez*, 48 F.3d 858, 864 (5th Cir. 1995). It is clear from the record that Acosta-Talamentez voluntarily chose to abandon his vehicle. Acosta-Talamentez testified at the suppression hearing that he voluntarily chose to follow Agent Baird, but then changed his mind and fled, leaving his vehicle unattended. Even if he had not abandoned the vehicle, however, the odor of marijuana provided probable cause for the search. *See United States v. McSween*, 53 F.3d 684, 686-87 (5th Cir. 1995) ("[T]he smell of marihuana alone may be ground enough for a finding of probable cause, as this Court has held many times.").

AFFIRMED.