**UNITED STATES of America,**

v.

**Frank Wiggs BENNETT, Frank Bennett, Appellant,**

**United States of America,**

v.

**Thomas F. Hoffner, Sr., Appellant,**

**United States of America,**

v.

**Michael Hoffner, Appellant.**

Nos. 01–3412, 01–3630, 01–3981.

United States Court of Appeals, Third Circuit.

Argued July 28, 2003.

Decided Aug. 29, 2003.

Christopher D. Warren, [Argued], Philadelphia, PA, for Appellant Frank Bennett.

Peter Goldberger, [Argued], Law Office of Peter Goldberger, Ardmore, PA, for Appellant Thomas F. Hoffner, Sr.

Nicholas Velez, Bronx, NY, (and) Anna M. Durbin, [Argued], Ardmore, PA, for Appellant Michael Hoffner.

Joseph T. Labrum, III, Craig D. Margolis, [Argued], Kenya S. Mann, [Argued], Robert A. Zauzmer, [Argued], Office of U.S. Attorney, Philadelphia, PA, for Appellee.

Before SCIRICA, Chief Judge,
RENDELL and AMBRO, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

In this consolidated appeal, Frank Bennett, Thomas Hoffner, Sr., and Michael Hoffner raise various points of error arising from their trial, conviction, and sentencing for conspiracy to distribute methamphetamine. For the reasons that follow, we will affirm the judgments of conviction as to each appellant, but will remand for resentencing of Hoffner, Sr., and Michael Hoffner.

As we write solely for the parties, we will recite only those facts relevant to the issues before us. In August 1999, Bennett and the Hoffners, along with eight others, were indicted for conspiring to distribute methamphetamine and related offenses. Count One charged all three appellants with conspiracy and aiding and abetting; Counts Twelve and Seventeen charged Hoffner, Sr., with using a telephone in furtherance of the drug offense; and Count Eighteen charged Hoffner, Sr., and Michael Hoffner with using a telephone in furtherance of the drug offense. All three appellants pled not guilty and proceeded to trial.

During jury selection, the defendants collectively used nine of their ten allotted peremptory strikes against African–Americans.[1] The government challenged these strikes under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on the ground that the venirepeople were being stricken because of their race. The District Court denied all of the government's challenges but one, regarding an African–American venirewoman who was doing a crossword puzzle during voir dire. Regarding that venirewoman, the defendants explained that they wanted to strike the woman because her doing a crossword puzzle indicated that she was "analytical" and would be more susceptible to the government's argument that the pieces of evidence, including numerous audio and video tapes, fit together like a puzzle. 37–38a. The government responded that the crossword puzzle was just like a book, and that the Court had instructed the jurors to feel free to take out books while they waited. 38a.

The Court accepted the government's position that the defense was using its peremptory in a racially discriminatory manner, explaining, "I don't think there's any basis whatsoever for striking for the reasons set forth by defense counsel," and

1. One African–American was seated without interference.

stating that it found the given explanation "farcical," and believed that the woman was being stricken because of her race. 39a. The Court then seated the juror, allowing the defendants to use the peremptory strike against another venire person. 42a. In her opening remarks, the prosecutor analogized the case to a puzzle. Bennett then filed a Motion for Reconsideration of the *Batson* Ruling, arguing that the prosecution had made the exact "puzzle" argument to which they had feared the crossword puzzle juror would be susceptible. 48a. The Court denied the motion, and "reiterate[d] its findings that the effort of all defendants, all Caucasian, to strike [the crossword puzzle juror], an African–American female, was based on her race and that the reason given for striking her was a pretext." The Court then noted "that the lead prosecutor is an African–American female." 50a.

During trial, the government presented audio tapes of intercepted telephone calls, video surveillance tapes, testimony from Joseph Sinni, a cooperating witness who had been party to the conspiracy, regarding the participation of both Hoffners, and expert testimony from Narcotics Agent Kenneth Bellis regarding drug jargon. The jury convicted Bennett of all charges, Hoffner, Sr., of Counts One, Seventeen, and Eighteen, and Michael Hoffner of Counts One and Eighteen, and acquitted Hoffner, Sr., on Count Twelve. (Verdict Sheet, 10a–13a)

At sentencing, the District Court found that 12.6 kilograms of methamphetamine was attributable to Hoffner, Sr., and imposed a sentence of 264 months imprisonment, which term fell in the middle of the applicable guideline range. The Court then entered judgment against Hoffner, Sr., on Counts One and Eighteen, but did not enter any judgment on Counts Twelve and Seventeen. Regarding Michael Hoff-

ner, the Court found that his base offense level was 32, which carries a guideline range of 135–168 months. However, the Court sentenced Michael to a term of imprisonment of 20 years, based on the Court's understanding that Michael had previously been convicted of a felony drug offense and that it was therefore required to impose a 20 year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(A).

All three defendants appeal the Court's ruling that their use of the peremptory challenge against the crossword puzzler was based on the venirewoman's race, and the Court's admission of certain testimony by Agent Bellis regarding drug jargon and his evaluation of certain government witnesses. The Hoffners further claim that Agent Bellis should not have been allowed to testify as to why the government did not have more intercepted phone calls regarding the alleged drug conspiracy, that testimony regarding the manufacture of methamphetamine was improperly admitted because it involved events occurring outside the scope of the charged conspiracy, that the government committed misconduct when it referred to the "Hoffner family business" in its closing remarks, and that there was insufficient evidence that Michael knew of the purpose of the conspiracy or that Hoffner, Sr., and Michael's use of the telephone as charged in Count Eighteen was in furtherance of the conspiracy. Hoffner, Sr., challenges his sentence on the grounds that the Court impermissibly imposed a "general" sentence, rather than sentencing him on each count, that the Court's calculation of 12.6 kilograms was clearly erroneous, and that the Court did not provide any reason for sentencing him in the middle of the guideline range. Finally, Michael Hoffner challenges the enhancement of his sentence on the ground that the conviction that formed the basis for his enhanced sentence was

not final as of the date of the charged conspiracy.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction over the Court's final orders under 28 U.S.C. § 1291. Although the Court neglected to enter a final judgment as to Hoffner, Sr., on Counts Twelve and Seventeen, the jury clearly returned a verdict of "not guilty" on Count Twelve (12a) and "guilty" on Count Seventeen (12a). Therefore, we need not dismiss his appeal for lack of jurisdiction, because, while entry of judgment on both is obligatory, the District Court may easily remedy the defect. *United States v. Stallings,* 810 F.2d 973, 975 (10th Cir.1987); Fed.R.Crim.P. 32(d)(1). We will therefore direct the Court to enter judgment on Counts Twelve and Seventeen and will proceed with this appeal.

## I. Alleged Trial Errors

We begin with the *Batson* issue. *Batson* prohibits the use of peremptory strikes in a racially discriminatory manner. *Batson,* 476 U.S. at 95. An evaluation under *Batson* involves the familiar three-step burden shifting rules: first, the challenger must make out a prima facie case of purposeful discrimination; second, the one exercising the strike must present a race-neutral explanation; finally, the challenger bears the "ultimate burden" of proving that the reason given is a pretext and that the discrimination was intentional. *Id.* at 93–94, & n.18. Here, the defendants concede that the government made out a prima facie case, and the government concedes that the defendants presented a race-neutral explanation. The question then is whether the District Court erred in finding, at Step Three, that the defendants engaged in intentional discrimination in striking the crossword puzzle venirewoman.

We review the Court's factual finding that the defendants' explanation for why they struck the crossword puzzle venirewoman was a pretext for intentional discrimination for clear error. *United States v. Uwaezhoke,* 995 F.2d 388, 394 (3d Cir. 1993). Under the clear error standard, "[w]e must accept the factual determination of the district court unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Id.* (quoting *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 92 (3d Cir.1992)). We owe great deference to the Court's *Batson* findings, as the District Court was in the best position to evaluate the credibility of the attorneys. *Batson,* 476 U.S. at 98 n. 21.

█ Under this deferential standard, we find no error. In making its final determination, the Court was entitled to "disbelieve a silly or superstitious reason." *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (explaining that in the *Batson* context "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination"). The Court's belief that the crossword puzzle reason was unworthy of credence, combined with the strong prima facie showing of discrimination, which was based on the fact that the defendants had used all but one of their strikes against African–Americans and the prosecutor was herself African–American, fortifies our view that the Court's finding was not clearly erroneous. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case,

suffice to show intentional discrimination.").[2]

We will next address the defendants' challenges to the Court's evidentiary rulings. First, regarding Agent Bellis, who testified as an expert in "drug jargon," the defendants contend that the District Court erred in allowing Agent Bellis to interpret the meaning of the words "breakfast" and "lunch" and other statements uttered by the defendants at various points during intercepted phone conversations. Agent Bellis testified that a number of these statements were coded references to drug activity. The defendants argue that the Court's admission of this testimony violated Federal Rule of Evidence 702 because the testimony was not helpful to the jury and Rule 704(b) because the testimony went to the ultimate issue of the defendants' intent to engage in a conspiracy. The defendants objected to Agent Bellis's testimony under Rule 702, therefore we review the District Court's admission under that rule for abuse of discretion. *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir.1999). However, the defendants did not object under Rule 704(b), therefore we review the Court's admission under that rule for plain error. *United States v. Boone*, 279 F.3d 163, 173 & 174 n. 6 (3d Cir.2002). Under either standard, we will only reverse if the error affected a "substantial right" of the defendants. Fed. R.Evid. 103(a), (d); *Gibbs*, 190 F.3d at 213.

■ We find no reversible error. Although it may be a close question as to whether, in the instances highlighted by appellants, Agent Bellis's testimony crossed the line into "unhelpful" testimony about ordinary terms, or went to the ultimate issue of intent, given the other evidence of guilt, including the testimony of corroborating witnesses and the Agent's

unquestionably permissible statements, any possible error here was harmless, as we find it "highly probable that the error did not contribute to the judgment." *Gibbs*, 190 F.3d at 213 n. 16 (quoting *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir.1999)).

The defendants further contend that Bellis impermissibly vouched for the credibility of government witnesses. In response to a cross-examination about the potential for government witnesses to lie, Bellis was asked on redirect to explain the precautions that he takes when interviewing witnesses to determine whether or not they might be lying. The defendants did not object to this line of questioning, therefore we review for plain error, and find none. Contrary to the defendants' contention, Bellis did not impermissibly "assure the jury that the testimony of a Government witness [wa]s credible." *Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir.2002). Rather, Bellis simply explained the kind of investigative techniques he used in evaluating a government witness in response to insinuations made by the questioning in cross-examination. The Court did not err in allowing the testimony.

■ The Hoffners also claim that the District Court erred in allowing Agent Bellis to testify as to why the government was only able to present four drug-related telephone calls between Michael Hoffner and Hoffner, Sr. In response to the defendants' argument that the government's case was weak because it included only a handful of calls between the Hoffners, Bellis testified that the reason the government could not present any more calls was because the two used "Nextel–to–Nextel" communications, which the government was unable to intercept. As no objection was made at

---

**2.** Because we find that the Court did not err, we leave for another day the question of whether an erroneous grant of a *Batson* challenge automatically results in reversal.

trial, we review for plain error, and again find none. The inaudible Nextel calls were not themselves admitted into evidence, nor was there any suggestion by the government that those calls involved drug activity. Rather, Bellis simply explained why they did not have more calls to present without making any intimations as to the content of the calls.

■ Next, the Hoffners claim that the Court committed plain error in admitting evidence regarding their efforts to acquire the ingredients for manufacturing methamphetamine during the summer or fall of 1999 because such activity fell outside the scope of the conspiracy. This contention is without merit, as such evidence was relevant to the charge of conspiracy to distribute methamphetamine from "in or about August 1998 to *on or about* June 1999." (75a) "Where 'on or about' language is used, the government is not required to prove the exact dates, if a date reasonably near is established." *United States v. Nersesian,* 824 F.2d 1294, 1323 (2d Cir. 1987) ("In our view, the government's argument that the date of the actual transaction was possibly July or early August was not an improper material variance from the 'on or about June 1984' date charged in the indictment."). Our decision in *United States v. Boyd,* 595 F.2d 120, 125 (3d Cir. 1978), in which we held that evidence falling two months outside the exact dates of the indictment was inadmissible, is not to the contrary, as in *Boyd* the government conceded that the evidence was not offered as part of the conspiracy but rather to establish a predisposition to deal in drugs and the modus operandi.

■ The final evidentiary error raised by the Hoffners involves the prosecutor's use of a purported "guilt by familial association" argument in closing. Again, as there was no objection at trial, we review for plain error. We have refused to allow a conviction based on a person's familial relationships. *See Gambino v. Morris,* 134 F.3d 156, 162 (3d Cir.1998). Here, however, there was clear evidence of Michael's participation in the conspiracy completely outside his relationship with his father. The prosecutor's reference to the "Hoffner family business" was a permissible characterization of the facts before the jury, which included evidence that Hoffner, Sr., his son, Thomas Hoffner, Jr., and his other son, Michael, were all involved in the distribution of methamphetamine.

■ Finally, the Hoffners claim that there was insufficient evidence to allow the jury to find that Michael knew of the purpose of the conspiracy or that the telephone conversation between Michael and Hoffner, Sr., on April 20, 1999, that formed the basis for Count Seventeen, facilitated the conspiracy. The Hoffners' contentions are without merit. Viewing the evidence, as we must, in the light most favorable to the verdict, *United States v. Dent,* 149 F.3d 180, 187 (3d Cir.1998), the jury could have believed Sinni's testimony that Michael provided Sinni with methamphetamine when Hoffner, Sr., was not available. The jury could have also found credible Sinni's testimony that he met with Hoffner, Sr., at the time and place discussed in Hoffners' telephone call and gave Hoffner, Sr., money for the meth in a plastic bag. Coupled with the videotape showing Hoffner, Sr., and Michael then meeting at another location, which was also discussed in the phone call, and passing a plastic bag between them, the evidence before the jury was enough for it to find that the phone call had facilitated the conspiracy. Given our deferential standard of review, we cannot overturn the jury verdict based on the fact that Sinni was "an admitted drug dealer and 'weekend' cocaine user," App. Br. at 26, but

rather must credit the jury's apparent finding that Sinni was a credible witness.

Therefore, because we find that the District Court did not commit any reversible trial errors, we will affirm the judgments of conviction.

II. Sentencing Errors

We find, however, that the District Court did commit a number of errors during sentencing of the Hoffners, and we will therefore vacate their sentences and remand for resentencing.

Regarding the enhancement of Michael's sentence for a "prior" felony drug conviction under 21 U.S.C. § 841(b)(1)(A), the government concedes that Michael's conviction under New Jersey law for possession of methamphetamine with intent to distribute was not final until after the instant conspiracy had ended, and that the enhancement therefore cannot apply. *See United States v. Vasquez*, 298 F.3d 354, 359 (5th Cir.2002). The proper range for Michael's sentence would appear to be 135 to 168 months imprisonment, unless an adjustment is warranted.[3]

■ We will also vacate Hoffner, Sr's, sentence and remand for resentencing, as we find that the District Court clearly erred in not providing a specific sentence on each count, *see* U.S.S.G. § 5G1.2, not providing a reason for imposing a sentence above the bottom of the guideline range, *see* 18 U.S.C. § 3553(c)(1), overstating the 1.1 kilograms distributed by Thomas Hoffner, Jr., by 1.5 kilograms, and relying on estimates of methamphetamine amounts without "articulat[ing] an adequate evidentiary basis for selecting the middle value of the two estimates, as opposed to selecting the low end of the range." *United States v. Medford*, 194 F.3d 419, 424 (3d Cir.

1999). Although these errors may not have put Hoffner, Sr., in a different guideline range, we cannot say that "the error did not affect the district court's selection of the sentence imposed," *United States v. Thayer*, 201 F.3d 214, 229 (3d Cir.1999), and will therefore remand for resentencing.

In accordance with the above opinion, we will direct the District Court to enter judgment on Counts Twelve and Seventeen, will affirm all judgments of conviction, and will vacate Hoffner, Sr., and Michael Hoffner's sentences and remand for resentencing.

---

**3.** As the Court did not consider Michael's request for a minor role adjustment due to its

application of the 20–year mandatory sentence, it may do so on remand.