# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 7, 2010

No. 09-11118

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JORGES VALDES,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:09-CR-059-A

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Jorges Valdes[1] was indicted for and entered a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals the denial of his motion to suppress evidence and his sentence under the U.S. Sentencing Guidelines (U.S.S.G.) by the United States District Court for the Northern District of Texas. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] At the rearraignment, Valdes gave his name as Jorge Felipe Valdes-Castanedo.

No. 09-11118

**I**

The record of the suppression hearing held by the district court reveals the following facts. A 911 caller reported that another person had been robbed of her purse by "Cuban George" at an apartment complex in Grand Prairie, Texas. The caller reported that "Cuban George" was an Hispanic male driving a red Chevy S-10 pickup truck with a license plate reading, in part, 1-3-1. The caller provided her location, the address of the apartment complex; the number of the telephone from which she was calling; and her first name, "Shaw Shaw." She also stated that she would wait for the police at the apartment complex office. The caller further reported that the victim of the robbery was nearby, but that the victim did not want to talk to police because there was an outstanding warrant for her arrest.

Grand Prairie police officers were dispatched to respond to the 911 call. Officer David Hickman observed a "reddish S-10 Chevy pickup" with a license plate reading, in part, 1-3-L, exiting the apartment complex. In court, Officer Hickman identified Valdes as the man who was driving the truck. Officer Hickman informed another officer in the area, Officer Clinton, of the sighting, and activated his lights and siren. Valdes immediately sped up, veered around and passed a vehicle stopped at a stop sign, turned right illegally, and continued to drive, in what he concedes was a reckless manner, away from Officer Hickman as well as Officer Clinton, who was following in a separate police car.

Valdes eventually stopped the truck, sliding to a halt sideways in the driveway of a house a few blocks from the apartment complex. As Officer Hickman approached, Valdes was exiting the truck; Officer Hickman observed Valdes "reaching behind the seats like he was attempting either to get something or put something behind the seats." Officer Clinton then approached, and both officers commanded Valdes to get on the ground. Valdes eventually complied and Officer Hickman placed him in custody.

2

No. 09-11118

When Valdes was apprehended near the truck, Officer Clinton walked past the truck's open driver's side door and told Officer Hickman that there was a weapon in the vehicle. Officer Hickman placed Valdes in the patrol car, walked back to the truck, and saw a handgun in plain view behind the seat, which was leaning forward. He seized the gun and cleared it of ammunition. He then checked the serial number of the handgun and learned that it was a stolen weapon; he secured the weapon and ammunition in the trunk of his patrol car. Officer Hickman also found a purse and a cell phone on the passenger seat of the pickup truck. At some point Valdes waived his *Miranda* rights and told the officers that there was a gun in the truck and that his fingerprints would be on the gun. After the crime scene unit photographed the truck, its contents were inventoried and the truck was impounded.

Valdes was charged by indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the firearm found in his truck and any statements made as a result of the warrantless stop, detention, search, and seizure. After a hearing, the district court denied his motion to suppress evidence. Valdes then entered a conditional plea of guilty to the charge of felon in possession of a firearm, reserving his right to appeal his suppression issues.

Based on the Presentence Investigation Report (PSR), the district court found that Valdes was subject to the Armed Career Criminal Act (ACCA).[2] The court therefore sentenced him to the statutory minimum of fifteen years in prison,[3] followed by a five-year term of supervised release. Valdes argues, for the first time on appeal, that the district court erred in finding him subject to the ACCA.

---

[2] 18 U.S.C. § 924(e).

[3] *See id.* § 924(e)(1).

No. 09-11118

## II

Valdes argues that the district court erred by denying his motion to suppress the firearm and any statements made as a result of the warrantless stop, detention, search, and seizure. Valdes argued in his motion to suppress and at the suppression hearing that the police had neither reasonable suspicion to stop him nor probable cause to arrest him. He argued, therefore, that the plain view doctrine did not permit seizure of the weapon. He reasserts these arguments on appeal.

We accept the trial court's factual findings on the motion to suppress based on testimony at the hearing unless the findings are clearly erroneous,[4] viewing the evidence in the light most favorable to the party that prevailed below.[5] We review de novo questions of law and the district court's ultimate conclusions of Fourth Amendment reasonableness.[6]

Valdes argues that the district court erred in finding that the plain view doctrine justified the seizure of the firearm. He contends that the officers did not have reasonable suspicion to stop him, much less probable cause to arrest him, because the 911 call was an "anonymous tip." Because the officers did not have probable cause to arrest Valdes for robbery, he continues, they did not have authority to seize the gun, and it should have been suppressed. The Government argues that the 911 call was sufficiently reliable to provide reasonable suspicion for the stop, and that Valdes's behavior after the officers tried to effect the stop gave rise to probable cause. Therefore, says the Government, the gun, found by the district court to have been in plain view, was appropriately seized.

---

[4] *United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003).

[5] *United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993).

[6] *United States v. Vasquez*, 298 F.3d 354, 356 (5th Cir. 2002) (per curiam).

4

No. 09-11118

## A

We agree with the district court that the information given in the 911 call provided reasonable suspicion to justify the officers' stop of Valdes. We look at the facts known to the officers at the time to determine whether they had reasonable suspicion for the stop.[7]   When examining the sufficiency of an informant's tip as the basis for reasonable suspicion, we look to several factors, as enumerated in *United States v. Martinez*: "'the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.'"[8]

For example, in *United States v. Vickers* the police responded to an emergency call in which the caller reported that his home had been burglarized.[9] The caller provided his name, address, telephone number, and other personal information.[10]   The caller reported that the burglar was a black male dressed in a red T-shirt and dark shorts, and that the burglar might still be in the area.[11] The police discovered Vickers about 100 yards from the burglarized home; he matched the 911 caller's description.[12]   Vickers attempted to flee from the

---

[7] *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008); *see United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) ("Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure.").

[8] *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) (quoting *United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1999)).

[9] 540 F.3d at 359.

[10] *Id.* at 361.

[11] *Id.* at 359.

[12] *Id.* at 361.

officers, but was subdued and handcuffed.[13]  In determining whether there was reasonable suspicion for the stop, we began at the "starting point" of presuming "the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly when the caller identifies himself."[14]   We ultimately concluded that the officers "had a 'particularized and objective basis' to believe that a crime had been committed and that Vickers was involved."[15]

This case is distinguishable from the facts of *Florida v. J.L.*, in which the Supreme Court concluded that a tip given to police by an anonymous caller was not sufficiently reliable to give rise to reasonable suspicion for a stop.[16]  In *J.L.*, the anonymous caller reported to the police that a "young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun."[17]  When police arrived at the bus stop, they observed a young man—J.L.—matching the description, frisked him, and seized a gun from his pocket.[18]  The Court held that the "bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." did not have the "moderate indicia of reliability" necessary to provide reasonable suspicion.[19]

Valdes relies on *J.L.* to argue that the 911 call in his case was not sufficiently reliable to give rise to reasonable suspicion.  But, similar to the caller

---

[13] *Id.* at 359.

[14] *Id.* at 361 (internal quotation marks omitted).

[15] *Id.* at 361 (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).

[16] 529 U.S. 266, 271 (2000).

[17] *Id.* at 268.

[18] *Id.*

[19] *Id.* at 271.

No. 09-11118

in *Vickers*, the 911 caller in this case gave her name—Shaw Shaw—and provided the address and phone number where she could be located, all indicia of her credibility. The tip was specific, concerned recent, not stale, activity—in fact, the caller reported an emergency situation—and was verified by officers when they arrived at the scene. All of the factors enumerated in *United States v. Martinez* are met.[20] These facts also serve to distinguish this case from the insufficient indicia of reliability the Court identified in *J.L.* Considered in their totality, we agree with the district court that these facts gave rise to reasonable suspicion for the officers to validly stop Valdes.[21]

## B

Valdes also argues that the officers did not have probable cause to arrest him, and that the firearm and any statements made as a result of the arrest should have been suppressed as fruit of the illegal arrest. The Government argues that Valdes's behavior when the officers attempted to effect the stop raised their reasonable suspicion of a robbery to probable cause for his arrest.

The officers had probable cause to arrest Valdes without a warrant. In considering whether the officers had probable cause, we look to the "totality of the facts and circumstances within a police officer's knowledge at the moment of arrest" to determine whether they are "sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[22]

The officers received information from the dispatcher that a robbery had occurred and that the person who had committed the robbery was reportedly driving a red Chevy S-10 pickup, with a license plate reading, in part, 1-3-1. Officer Hickman saw a red Chevy truck with a similar license plate number and

---

[20] *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007).

[21] *See id.*

[22] *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995).

No. 09-11118

pursued the truck.  When Valdes saw the police car in pursuit, he attempted to flee, driving in a reckless manner to evade capture.  Though "[s]tanding alone, a suspect's attempt to walk away or flee from a police officer is generally not sufficient to create probable cause, . . . in combination with other facts and circumstances, flight from an officer may create probable cause where the defendant persistently attempts to evade capture."[23]  The totality of the circumstances of the officers' knowledge at the time they arrested Valdes gave rise to probable cause that he had committed a robbery.[24]

## C

Because the officers had probable cause to believe that Valdes had committed a robbery, their seizure of the firearm, which the district court found was in plain sight, was lawful.  The "plain view" exception to the general rule prohibiting warrantless seizures allows police to seize items where (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent"; and (4) the police had a lawful right of access to the item.[25]  Valdes challenges only the third factor, arguing that the seizure was not justified because a handgun does not have an immediately apparent incriminating nature.

Valdes did not argue at the suppression hearing that the incriminating nature of the firearm was not immediately apparent; thus, our review is for plain error.[26]  To show plain error, Valdes must establish that (1) there was an error; (2) the error was clear and obvious, rather than subject to reasonable dispute;

---

[23] *Id.*

[24] *See id.*

[25] *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

[26] *United States v. De Jesus-Batres*, 410 F.3d 154, 158 (5th Cir. 2005).

No. 09-11118

and (3) the error affected Valdes's substantial rights.[27]  If Valdes makes the requisite showing, this court may exercise its discretion to correct the error only if it (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.[28]

The district court did not err in concluding that the handgun was lawfully seized.  Officers Hickman and Clinton had probable cause to believe that Valdes had participated in a robbery, as discussed above.  When Valdes finally stopped his truck and the officers placed him under arrest, the officers saw a handgun in plain view in Valdes's truck.  Based on these facts, the district court did not err, let alone plainly err, in concluding that the officers had probable cause to believe that the firearm was connected to the robbery and was lawfully seized.[29]  We need not, therefore, reach the Government's argument that the handgun would have been discovered pursuant to an inventory search.

### III

We turn to whether the district court erred in applying the sentencing enhancement under the ACCA to sentence Valdes to fifteen years' imprisonment, rather than the statutory maximum of ten years' imprisonment without the ACCA qualification.[30]  Because Valdes did not raise his objection in the district court proceedings, we review for plain error.[31]  We have previously held that if the district court erred in applying the ACCA sentencing enhancement, and this

---

[27] *United States v. John*, 597 F.3d 263, 284 n.91 (5th Cir. 2010) (citing *Puckett v. United States*, --- U.S. ---, 129 S. Ct. 1423, 1429 (2009)).

[28] *Id.*

[29] *See De Jesus-Batres*, 410 F.3d at 159 (holding that the district court did not err in concluding that the incriminating nature of a gun was apparent when officers were responding to charges that the defendants were holding aliens against their will).

[30] *See* 18 U.S.C. 924(a)(2).

[31] *United States v. Garcia-Mendez*, 420 F.3d 454, 456 (5th Cir. 2005).

No. 09-11118

application "clearly affected the sentence," the fourth prong of plain error analysis is satisfied and the case should be remanded for resentencing.[32]

Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g) as a felon in possession of a firearm who has three prior convictions "for a violent felony or a serious drug offense . . . committed on occasions different from one another" is subject to a mandatory minimum prison sentence of fifteen years.[33] A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" and, in relevant part, is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[34]   The Supreme Court has interpreted "burglary" in this statute as a modern, generic form of burglary.[35] A state statute describes a generic burglary only if it requires, at a minimum, "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."[36]

Valdes argues that one of the three prior convictions the district court found qualified him for ACCA status, his prior conviction for burglary, does not qualify as a conviction for generic burglary and therefore cannot be used to enhance his sentence.  The disputed burglary conviction was under Texas law. Section 30.02(a) of the Texas Penal Code provides that a person commits burglary if, without the effective consent of the owner, that person either

---

[32] *United States v. Gonzales*, 484 F.3d 712, 716 (5th Cir. 2007) (per curiam).

[33] 18 U.S.C. § 924(e)(1).

[34] *Id.* § 924(e)(2)(B)(ii).

[35] *Taylor v. United States*, 495 U.S. 575, 598 (1990).

[36] *Id.*

10

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with the intent to commit a felony, theft, or an assault; or

. . .

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

This court has held that the offense of burglary of a habitation under § 30.02(a)(1) qualifies as a generic burglary for purposes of sentencing enhancement under the ACCA.[37]   However, we have recently held that a burglary conviction under § 30.02(a)(3) is not a conviction for generic burglary for that purpose because it does not contain the element of specific intent.[38]

The district court appears to have relied solely on the PSR for the characterization of Valdes's prior conviction as a violent felony under the ACCA, a clear and obvious error under *Shepard v. United States*.[39]   But we must still determine whether such an error affected Valdes's substantial rights.  For this appeal, we have permitted the Government to submit as a supplement to the record Valdes's Texas indictment, judicial confession, and judgment for the burglary conviction.[40]  We generally follow the categorical method to determine whether a statute meets the definition of "violent felony" for purposes of the ACCA .[41]  But when a statute may be violated in a way that constitutes a violent crime and in a way that does not, we look to other judicial documents to make

---

[37] *United States v. Constante*, 544 F.3d 584, 585 (5th Cir. 2008) (*citing United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992)).

[38] *Id.* at 585-87.

[39] *United States v. Garza-Lopez*, 410 F.3d 268, 273-74 (5th Cir. 2005) (citing *Shepard v. United States*, 544 U.S. 13, 16, 26 (2005)).

[40] *See United States v. Garcia-Arellano*, 522 F.3d 477, 479-80 (5th Cir. 2008) (permitting the record on appeal to be supplemented with the appellant's state court indictment, judicial confession, and judgment when he appealed the application of a sentencing enhancement for a state conviction).

[41] *Garza-Lopez*, 410 F.3d at 273 (citing *Taylor*, 495 U.S. at 602).

the determination.[42]   The indictment, judicial confession, and judgment are "within the scope of documents a court may consider under *Shepard*."[43]

Tracking the statutory language of both generic and nongeneric burglary, Valdes's indictment charges that he did

intentionally or knowingly, without the effective consent of [the victim], the owner thereof, enter a habitation with intent to commit theft, . . . and . . . did intentionally or knowingly, without the effective consent of [the victim], the owner thereof, enter a habitation and did attempt to commit theft.

In Texas, "proof of any one means of committing the charged offense," such as entering and attempting to commit theft, "could sustain a judgment for conviction" under the Texas burglary statute.[44]   Valdes pleaded guilty to the charge of burglary in the indictment.  Valdes is charged in the conjunctive, but under Texas law, his guilty plea alone would not support the conclusion that he pleaded guilty to generic burglary.  However, in Valdes's judicial confession, which is sufficient evidence to support a conviction in Texas,[45] he swears that he "committed *each and every allegation* [the indictment] contains."  Valdes's confession to "each and every" allegation in the indictment is sufficient to establish that he was convicted of generic burglary.

Our recent decision in *Garcia-Arellano* supports this conclusion.  In *Garcia-Arellano*, the issue was whether a state conviction was for drug trafficking.[46]   The state statute under which Garcia-Arellano was charged

---

[42] *Garcia-Arellano*, 522 F.3d at 480.

[43] *See id.* at 480-81.

[44] *See United States v. Perales-Solis*, 275 F. App'x 443, 445-46 (5th Cir. 2008) (per curiam) (unpublished) (citing *United States v. Morales-Martinez*, 496 F.3d 356, 358-61 (5th Cir. 2007)).

[45] *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

[46] 522 F.3d at 479 (discussing U.S.S.G. 2L1.2(b)(1)(B)).

included conduct that did and did not constitute a trafficking offense for enhancement purposes.[47]   The indictment tracked the statutory language, charging in the conjunctive offenses that would and would not meet the elements for the drug trafficking enhancement.[48]   In his judicial confession, which we also examined for the appeal, Garcia-Arellano admitted to the charges in the conjunctive and to the "offense with which [he] stand[s] charged exactly as alleged in the indictment."[49] This language, we held, "clear[ed] up any ambiguity presented by the indictment and judgment," and was sufficient to support the district court's enhancement for a drug trafficking offense.[50]

The language of Valdes's judicial confession is similar to that in the confession in *Garcia-Arellano*, and our reasoning in that case is persuasive here. The district court's error in relying on the PSR for characterization of Valdes's prior conviction as a violent felony did not affect his substantial rights.[51]   The district court did not commit plain error in sentencing Valdes to fifteen years, the statutory minimum under the ACCA.

*     *     *

We therefore AFFIRM the district court's denial of Valdes's motion to suppress and AFFIRM the sentence the district court imposed.

---

[47] *Id.* at 480.

[48] *Id.* at 481.

[49] *Id.*

[50] *Id.*; *see also United States v. Peralez-Solis*, 275 F. App'x 443, 446 (5th Cir. 2008) (per curiam) (unpublished) (holding that a judicial confession in which the defendant–appellant admitted that he committed the "*acts* alleged" and that "if the State's witnesses were sworn in and testified, they would testify that I committed *each and every element alleged*," removed any potential ambiguity in the conjunctively charged indictment).

[51] *See United States v. Martinez-Vega*, 471 F.3d 559, 561 (5th Cir. 2006) ("[T]he Supreme Court has made clear that we determine whether the error was plain at the time of appellate consideration—not at the time of trial." (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)).